Good morning. Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Appellant Tammi Camacho. I will try to reserve some of my time for rebuttal. Ms. Camacho is appealing the District Court's denial of her motion to suppress the search of an envelope in her carry-on luggage. After the CTX machine alerted for an oversized liquid, aerosol, or gel, the agent opened Camacho's luggage and then opened an envelope, read the names and addresses, and looked at the pictures on credit cards and licenses in the envelope. Ms. Camacho contends the District Court erred in denying her motion to suppress that evidence because the agent exceeded the scope of a lawful administrative search. Now, the prism through which we evaluate the search in this case begins with the Fourth Amendment, which protects against unreasonable searches and seizures. What does the record show as to how long the agent, you know, looked in the envelope? I think the evidence is that the agent looked in the envelope the first – she had looked at it numerous times, but the first time it was about 15 seconds. She went through and read each card, she pulled out some of the cards and looked at them, and she later testified she had read the names and addresses on all of them and looked at the pictures on them. So during the 15-second period, open the envelope, she pulled out several cards individually? Yes. And then saw the names and other info on the cards? Yes, she looked at the names, addresses, the pictures, and saw that there were different names and addresses and different pictures on them. And why isn't it – the reason for the search was because the machine alerted to some oversized liquid, gels, or aerosols, right? Yes. And that may be an explosive that someone's trying to bring on a plane. If someone sees a number of identifications there, why isn't it appropriate as part of the search for the explosives to look to see, does this person have some false identifications here? If so, might this be a reason to be suspicious we may be dealing with a potential terrorist who's trying to bring on board through the oversized liquids, gels, or aerosols an explosive onto the plane? I think, Your Honor, what we have to do is focus on the fact that we're dealing with a search which is only reasonable where it's no more extensive nor intensive than necessary in the light of current technology to detect the presence of weapons or explosives. So here we have a machine that's alerting only for an oversized liquid, gel, or aerosol. She should go and find that liquid, gel, or aerosol. She did find it ultimately after she went through the envelope. It turned out to be a hair product. Once she realized it was a hair product, then there was no reason to be alarmed. Also, she swabbed the outside of the bag, and that would tell her whether there was anything explosive or dangerous in the bag. Is the only authorization of these checkpoint TSA personnel, their only authorization is to check for explosives or other similar kinds of material and not for other things that might violate the law? Say, for instance, you know, heroin. Suppose she saw a package of heroin in the envelope. Well, I think their obligation... That's not something she's authorized to search for? Our argument is her obligation is to search for what is alerted by the machine, and we cite some authorities in the brief that support that. I think if she sees something like heroin, that might be a different case. That's not this case, because in this case she has a flat envelope that couldn't be an oversized liquid gel or aerosol, and she opens it up and starts reading the items in it. It could be, you know, flat explosives. Well, that, in fact, it can't be because we're relying on the CTX machine, the current technology which supports cases. But the alert leads to a more thorough search. During the course of that search, if you encounter something that may pose a danger, you're supposed to ignore it because that was not the source of the alert? Is that your argument? Because I'm looking at the declaration of the officer who searched it, and she said that she started to search the bag and at this point hadn't determined what had triggered the alert, and based on defendant's reaction and the way that the envelope felt, I became concerned that she was trying to conceal the contents of the envelope from TSA inspection and that the envelope may contain hazardous materials. So in your view, what is the TSA officer supposed to do at that point once she became concerned that there was hazardous materials? Just put it back because that was not the original alert through the machine? Well, the question is, what is the material? We've got an alert for an oversized gel. She finds this envelope. She later declares, I think, that she thought that it might be an initiator for the hazardous material. So she can look for the gel. So she can look at the gel, find out that it's hair shampoo, and she knows that there's no initiator for that gel because it's not an explosive material. So our argument is that when, and I think the case is supported that aside in our brief, once the machine alerts for something, the machine didn't alert for a dense mass. It didn't alert for a mass. Wait a minute. Are you saying if a machine alerts to something, you know, say something that size, size of a glass, then the agent can't search the luggage for anything else that might, you know, come within, I'll say, her authority to search? No. Such as a smaller, you know, a smaller bottle or something like that? Our position is that we're relying on current technology. That's what this Court's cases say. Current technology is the CTX machine, which tells them what they need to look for. And that's what the TSA protocol is. And what you're saying, the law says she can only look for that one object, no matter what else she sees in the suitcase? Well, if she saw a gun in the suitcase, that might be a different thing. But if there was a gun, it would have been on the CTX machine. Oh, I mean, something that's necessary, that she was not alerted by, by the scanning machine. She can't look for anything else? She just has to focus on the one thing that the scanner shows? Well, our position is that in this case, she's not entitled to go through an envelope. I mean, if she saw something like a gun or a weapon, even if that was hazardous materials, that's, I think, where your argument really falls apart for me. Because, yes, you're looking for whatever triggered the machine. But in the course of that search, if you find something that gives rise to some serious concern, you can't look? I don't know a case that says that. Well, I think the cases say you're, the TSA protocol is that you're to look for the item that alerts. Now, the question is, there was no dense matter. So, in other words, she was saying it might be an initiator. But if there's no, but if the liquid gel or aerosol, for the liquid gel or aerosol, but if we know the liquid gel or aerosol is not an explosive, then there's no concern about an initiator. But we didn't know that before she looked in the envelope. No, but she could look for the liquid gel or aerosol and then realize that there's no reason to look in the envelope. Or if she looks in the envelope and sees an initiator, she'd probably do a much more thorough search to make sure she's looking, to examine what looks like it may be hairspray or hair conditioner. Well, I think one of the concerns is that, as the defense counsel below repeatedly said, we don't know what an initiator is. So we don't know whether she really needed to look at names and addresses on all the cards to determine whether or not they were initiators. But in McCarty, there you're dealing with a dense mass that was alerted, and you have sheet explosives. So if there's something dangerous like that, that's also going to alert on the CTX, and it didn't alert in this case. Now, we don't know what an initiator is because we didn't have an evidentiary hearing, so we don't know if it would have alerted. But presumably, if that's a danger and it's a hazard to air travel, then it would be something the CTX would be looking for. Also, when she opened the envelope to look for the initiator, what would or should she have done if she saw either a knife, a box cutter, or razor blades, notwithstanding the fact that the machine did not identify that as dense matter? What should she have done? Well, I think that that's not this case, I have to say, because the envelope was flat, so it couldn't have been box cutters or razor blades. Those would have been on the CTX, though. I know, and that's my question. Razor blades are about the same hardness as maybe some credit cards, give or take, and what if she saw some razor blades in there, but it did not alert on the machine? What, if anything, would she have been allowed to do? Well, I actually don't know if razor blades are something you're allowed to carry on luggage. You're not answering the question. Well, my point is I don't know if razor blades are something dangerous that you would be allowed to call a hazard to air travel or not. All right, so having that opinion, then your conclusion is that she wasn't authorized to take any further action, right? Close the envelope and look for something else. That's what she had to do. I'm sorry, I don't know whether razor blades are considered something you're allowed to take on. Well, you said it's not. You said it's not anything dangerous. If they're not dangerous, then I think she would have. Well, you said in your opinion they weren't. I'm sorry. So because in your opinion they weren't, she was not authorized to search further in the envelope. Close the envelope and look for something else, right? That was her obligation. If people are allowed to carry razor blades on and she finds razor blades, then there wouldn't be anything to do. If people aren't allowed to carry razor blades in their carry-on luggage, and I don't know the answer to that, then I guess that's something contraband. If there are no further questions, I'd like to reserve my 20 seconds. Thank you. We'll put a minute on the clock when you come back. May it please the Court, David Ryan on behalf of the United States. In the context of an administrative search at the airport, unlike a search pursuant to a warrant, which would limit the scope of the search to the items identified or listed in the warrant, the scope of the administrative search is limited to the point where, as this Court held in McCarty, quote, the screener was convinced the bag posed no threat to airline safety. And is that limited just to looking for the items identified by the machine? No. And there are two ways that we know that's not the limitation of the scope. One is Akai, this Court's decision in Akai, where the traveler and his luggage went through the X-ray and the magnetometer, and there was no alert for either the passenger or the bag. But because the passenger didn't have an ID, he was subject to secondary screening of both himself and the bag. And when agents wanded and then felt and found an item in his pocket, they, the Court held, were allowed to pat wand and then pat down and then force him to take out that item and then, in fact, force him to unwrap it, finding that it was drugs. All right. I think I agree with all that. But in this case, here's my problem. She opened this envelope, and the evidence is not real clear, but I think she must have concluded, you know, there's nothing in this envelope that's dangerous for a passenger to carry on an airplane. Hadn't she had time to reach that conclusion before looking further, you know, looking at the cards for the names and the numbers and so forth? Well, the record is that, and the video, I think, shows the nature of the search.  The search was approximately 15 seconds. The problem with the video doesn't show her state of mind. That's correct. So the search was a 15-second search through the envelope, from when she begins to open the envelope to when she looks through the cards. And her statement to the – Why would she have to look through the cards? What she said in her statement to the FBI immediately after the incident and then again in her declaration is that she felt a hard mass which she knew – I know, but why would she have to look through the individual cards? As this Court held in McCarty, in which the Court approved the agents leafing through or flipping through thin-sheet photographs, this Court has recognized that explosives and other hazardous materials can be flat, small, easily contained. McCarty referenced sheet explosives. The agent's declaration referenced a knife. But she didn't have that suspicion, did she, that these were explosives? She did not say that – she did not specifically say she thought there was an explosive.  or a detonator for an explosive device, or a knife, which, of course, is about – it can be very thin. You know, we don't have the benefit of her state of mind, but what – assuming under this hypothetical, what would be the situation? She opens it up. She sees identification cards. She sees at a glance that the picture on the card is not that person. And she knows that the machine has alerted her to potential explosives. And she now sees that this person is carrying false identification, or might be. Is she then allowed to look more thoroughly at those cards to really confirm her initial suspicion is that it's false identification? Because if it is, that might give her more grounds to be more concerned to look for explosives for someone who's carrying false identification. Am I wrong in that analysis? Is that precluded by existing Ninth Circuit precedent or not? What this Court has held is that if the agent has a secondary motive, at the same time she's conducting a search for hazardous materials, to confirm her suspicion that the items are contraband or false IDs, that secondary motive does not invalidate the administrative search. However, it is correct that if the search could not have been for the purpose at all of locating hazardous materials, no, she cannot continue to search just to confirm that an item is contraband. Doesn't all this give rise to the thought that it might have been a good idea for the District Court to hold an evidentiary hearing? Well, the burden in that case is on the defendant to... And she asked for an evidentiary hearing, didn't she? Correct, but her burden is not merely to ask for an evidentiary hearing, but to proffer facts that create a genuine dispute. Are these facts we've been talking about sufficient to require an evidentiary hearing, or to, you know, at least give more thought to an evidentiary hearing? So the question, the burden for the defendant was to proffer facts that put a genuine question as to the officer's consistent statement that the reason she flipped through or leafed through the cards was to look for hazardous materials. So the officer provided that declaration, and the burden was then on the defendant. There's evidence that she has to present in order to get an evidentiary hearing, evidence of pretext, right? There could be any number of ways she could attempt to cast doubt on the officer's credibility, the credibility of the officer's declaration. Well, that's the point that I was really going to. Pretext could be developed through cross-examination, couldn't it? So the burden, however, I think, is to show some basis before the court grants an evidentiary hearing, some basis to suggest that there is a question as to the officer's credibility. It's not the case that every time an officer's credibility is at issue, an evidentiary hearing is required. There must be some reason to doubt the credibility of the officer. Why doesn't the length of time in which the officer was looking through those cards, the identification documents, why doesn't that length of time create some question of pretext or credibility? Because it doesn't take that long to see that this is not an instigation device or initiation device for explosives. I think the district court was within its discretion. Of course, this decision not to hold an evidentiary hearing is reviewed for abuse of discretion. How long would it have required before the district court abused its discretion? So I think in this case, the record is that there were approximately 8 to 10 cards in the envelope, and the search was 15 seconds. And that included opening the card and leafing through the envelope and closing it back up. So we're at about a second or a little more than a second each time you're leafing through each card to see if there's anything in between the cards. So the question, I think, for this court is whether the district court abused its discretion. No, but also even the 15-second estimate, is that timed by the video? Yes. And does it show her pulling out cards and so forth? It shows her leafing through or thumbing through the cards. And that's the totality of her looking at the individual cards? That's the totality of her looking at the individual cards. At least the first time. Correct. It is. After that 15-second search, she closed the envelope, which, by the way, was unsealed when she picked it up. She closed the envelope and goes off screen, and the undisputed facts before the district court were that at that point she called for a supervisor because she believed she'd found contraband and by policy was required to stop and call for a supervisor. So from picking up the envelope, opening it, taking the stuff out, leafing through it, closing it, and that's when the 15 seconds ended? Correct. Still a long time, 15 seconds. Not when you're arguing. So I think the question for this court is whether the district's court decision or conclusion that it was not so long to raise a doubt as to the plausibility or credibility of the officer's statement, whether that conclusion by the district court was illogical or implausible or not supported by inferences from the record. Can you give me a citation of a case that succinctly states what showing a defendant has to make in order to be entitled to an evidentiary hearing? Yes, Your Honor. I would point the court to the De Cesare case, 765F2nd 890. 890? Correct. Okay, thank you. And that's cited in the government's brief, and there this court held that an evidentiary hearing is required only when a defendant, quote, sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact are in question. And that's asking for evidentiary hearing in what context? In the context of a suppression motion, in the same context as we have here. And I would point out that here one of the ways that a defendant could, that in this case the defendant could have raised a question, is by submitting, as required under the local rules, a declaration setting forth the facts that she believes support her motion. The defendant was there, and had the defendant seen anything in the officer's declaration, as is raised on appeal, that she thought was inconsistent with the video or with her memory, the defendant was in a perfect position to put out a declaration saying that's not how she remembers the facts. But that wasn't done. So there were no facts disputed before the district court that would have given a question as to the officer's credibility or the plausibility of her statement that there could be hazards inside the envelope, particularly in light of this Court's recognition that hazardous materials, be they knives, sheet explosives, or other items, can be thin, concealed among flat pieces of paper. The Court has no further questions? No.  Thank you. Thank you, Your Honor. Thank you, Your Honors. Very briefly. Government counsel first referred to the O'Kell case in which there was a further search. But in that case, the defendant was identified because he didn't have ID. On his cards, it was identified that he had no ID, so he was subject to a further search. In McCarty, the government counsel said that the Court approved leafing and thumbing. But what happened in McCarty was that, and what McCarty says is that, where the CTX alarms on a dense mass and the screener opens the bag to find a packet of photographs, the screener is required to leaf or thumb through the stack of photographs until she assures there are no sheet explosives. Again, the focus is on the CTX alerting on the dense mask. That's what McCarty says. And government counsel also talked about her leafing and thumbing through the cards. The Court has the video. I recall that she actually pulled out a card or two to look at them more closely in the initial screening. But the Court has the video to look at that. With respect to the evidentiary hearing, the government counsel said that the defendant didn't offer her own declaration. But in fact, the government put in the video, which contradicted the respects identified in our brief, the things said by the agent. And therefore, there was a dispute regarding what actually happened that day. And if there are no further questions, thank you very much. Thank you, counsel. Both sides for your argument. U.S. v. Camacho submitted.
judges: Tashima, Nguyen, Simon